UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

N.D.S., a minor child, by and through her
Parents and Natural Guardians, Susanna
and JoLynn de Campos Salles,

        Plaintiffs,

v.

ACADEMY FOR SCIENCE AND
AGRICULTURE CHARTER SCHOOL,
INDEPENDENT SCHOOL DISTRICT
NO. 4074 , et al.,

        Defendants.

Case No. 18-CV-0711 (PJS/HB)

ORDER

---

    Amy J. Goetz and Andrea L. Jepsen, SCHOOL LAW CENTER, LLC, for
    plaintiffs.

    Amy E. Mace and John P. Edison, RUPP, ANDERSON, SQUIRES &
    WALDSPURGER, for defendants.

    Plaintiff N.D.S. is a disabled child who qualifies for special-education services

from defendant Academy for Science and Agriculture Charter School ("AFSA") under

the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 et seq.

N.D.S.'s parents filed this lawsuit on her behalf, asking this Court to overturn a decision

of an independent hearing officer ("IHO") that N.D.S. is not entitled to a publicly

funded independent educational evaluation ("IEE").

    This matter is before the Court on the parties' cross-motions for summary

disposition on the administrative record.  The Court conducted a hearing on the

motions on November 9, 2018. For the reasons explained on the record at the hearing and further explained below, the Court denies the motions without prejudice and remands the matter to the IHO to decide whether N.D.S.'s claim is barred by IDEA's statute of limitations.

## I. BACKGROUND

### A. Legal Framework

IDEA establishes a right to a "free appropriate public education" ("FAPE") for children with disabilities. *See Bd. of Educ. of Hendrick Hudson Cent. Sch. Dist., Westchester Cty. v. Rowley*, 458 U.S. 176 (1982). "The core of the statute . . . is the cooperative process that it establishes between parents and schools." *Schaffer v. Weast*, 546 U.S. 49, 53 (2005). The "central vehicle for this collaboration" is the process through which the school and the parents work together to create and then to regularly update an "individualized education program" ("IEP"). *Id.* "Each IEP must include an assessment of the child's current educational performance, must articulate measurable educational goals, and must specify the nature of the special services that the school will provide." *Id.* (citing 20 U.S.C. § 1414(d)(1)(A)).

The IEP process begins with "a full and individual initial evaluation" to determine whether the child is entitled to special education and related services. 20 U.S.C. § 1414(a)(1)(A). The child's parents have a right to a copy of the evaluation and,

if they disagree with the evaluation, the right to request an IEE at public expense. 34 C.F.R. § 300.502(b)(1). If the parents make such a request, the school must either (1) "[f]ile a due process complaint to request a hearing to show that its evaluation is appropriate" or (2) pay for the IEE requested by the parents. § 300.502(b)(2).

Generally speaking, a school is required to reevaluate a child at least once every three years. 20 U.S.C. § 1414(a)(2)(B). But if the child's parents ask for a reevaluation—or if the school determines that changed circumstances warrant a reevaluation—the school must conduct a reevaluation even if it has been less than three years since the child was last evaluated. § 1414(a)(2)(A). The child's parents are entitled to a copy of each reevaluation. And again, if the child's parents disagree with a reevaluation, they can request an IEE at public expense. § 300.502(b)(1). The school must respond to such a request by defending the reevaluation at a due-process hearing or providing the requested IEE. § 300.502(b)(2).

### B. N.D.S.

N.D.S. was initially evaluated by the Roseville Area Schools when she was in the first grade, and she was found to qualify for special education and related services. *See* OAH 153. She was periodically reevaluated by the Roseville Area Schools. The last such reevaluation occurred in 2011. OAH 145.

N.D.S. started attending AFSA in 2013.  OAH 145.  AFSA promptly conducted a reevaluation of N.D.S. to ensure that she was receiving the services that she needed.  OAH 160-63.  The reevaluation was completed in February 2014.  OAH 164.  There is no indication that N.D.S.'s parents disagreed with that reevaluation in any way.

Beginning in late 2014, N.D.S. experienced a number of physical and emotional challenges, prompting her parents to request a reevaluation.  AFSA agreed to reevaluate N.D.S., and that reevaluation was completed in December 2015.  OAH 146-47.  N.D.S.'s parents received a copy of the reevaluation at a meeting with AFSA on December 16, 2015.  OAH 147.  N.D.S.'s parents had the opportunity to read the reevaluation, to discuss it with AFSA, and, if they wished, to have it reviewed by N.D.S.'s doctors.  There is no indication that N.D.S.'s parents disagreed with the reevaluation in any way.

N.D.S. suffered a concussion in June 2017 and, in the wake of that concussion, her physical symptoms and learning difficulties worsened.  N.D.S.'s parents hired a pediatric neuropsychologist (Dr. Katherine Quie) to evaluate N.D.S. in September 2017.  *See* OAH 149, 274, 260-74.  Dr. Quie confirmed that N.D.S.'s latest concussion had contributed to "increased frustration and cognitive difficulties[.]"  OAH 261.  Dr. Quie "strongly recommended" that N.D.S.'s parents meet with her IEP team to develop an updated IEP to "improve her success in school."  OAH 273.

N.D.S.'s parents did not, however, ask AFSA to reevaluate N.D.S. in light of her

changed circumstances. Instead, N.D.S.'s parents sent an email to AFSA on October 29,

2017, and in that email they informed AFSA that they had concluded that the December

2015 reevaluation (which was almost two years old at that point) had been inadequate:

> We have reviewed [N.D.S.'s] progress and we still have
> concerns about her IEP program. This led us to review her
> last evaluation from 12/16/15. We think it does not provide a
> good and comprehensive picture of her disabilities and
> needs. We think [N.D.S.] needs an independent educational
> evaluation and want AFSA to provide it at public expense.

OAH 228.

The decision of N.D.S.'s parents to not request a new reevaluation—but instead

to express disagreement with the December 2015 reevaluation—was strategic. As soon

became clear, the main goal of N.D.S.'s parents (who were being advised by legal

counsel) was to force AFSA to pay for an IEE of N.D.S. A school cannot be required to

pay for an IEE unless "the parent disagrees with an evaluation obtained by the

[school][.]" § 300.502(b)(1). Informing a school that, subsequent to an evaluation, a

child's condition has changed is not the same thing as disagreeing with the evaluation.

Thus, N.D.S.'s parents have repeatedly emphasized that they are contending that the

December 2015 reevaluation was inadequate at the time it was completed.

AFSA met with N.D.S.'s parents in November 2017 to discuss their request and

talk about N.D.S.'s progress in school. OAH 230-32. During the meeting, AFSA agreed

that the December 2015 reevaluation was "no longer current or an accurate representation" of N.D.S.'s needs and sought permission to reevaluate N.D.S. so that AFSA could "collaborate with the parents to develop and build a robust evaluation plan that will address[] areas of concern brought forth by the [school] and by the parents." OAH 234-35.  N.D.S.'s parents refused AFSA's request—that is, they refused to allow N.D.S.'s school to reevaluate her in light of her changed circumstances so that it could ensure that she was getting the services that she needed.  *See* OAH 275.[1]  Instead, the parents insisted that AFSA pay for an IEE.  When AFSA refused, the parents filed a due-process complaint with the Minnesota Department of Education.  OAH 397.

During the administrative proceedings, AFSA argued that N.D.S.'s objection to the December 2015 reevaluation was untimely under IDEA's two-year statute of limitations and that, even if the objection was timely, § 300.502(b) did not entitle N.D.S. to an IEE.  OAH 122-38.  The IHO held that the statute of limitations did not bar N.D.S.'s claim but that federal law did not give N.D.S. a right to a publicly financed IEE. OAH 10-14.  N.D.S.'s parents sought review of the IHO's decision and now ask this Court to order AFSA to provide an IEE at public expense.  ECF No. 1.

---

[1]IDEA's regulatory regime allows schools to override a parent's refusal to provide consent to a reevaluation so long as "State law relating to . . . parental consent" does not prohibit such an override.  *See* 34 C.F.R. § 300.300(a)(3)(i).  Minnesota law does prohibit a school from "overrid[ing] the written refusal of a parent to consent to an initial evaluation or reevaluation."  Minn. Stat. § 125A.091, subd. 5(a).  As a result, AFSA cannot reevaluate N.D.S.

## II. ANALYSIS

### A. Standard of Review

Under IDEA, a party may seek review of an administrative decision in federal court. 20 U.S.C. § 1415(i)(2)(A). "[A] district court must review the state administrative record, hear additional evidence if requested, and, 'basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate.'" *CJN v. Minneapolis Pub. Schs.*, 323 F.3d 630, 636 (8th Cir. 2003) (quoting 20 U.S.C. § 1415(i)(2)(B)).[2]

---

[2]AFSA moves for summary judgment under Fed. R. Civ. P. 56, whereas N.D.S. moves for judgment as a matter of law on the administrative record. These motions are governed by different standards of review. *See Morton Cmty. Unit Sch. Dist. No. 709 v. J.M.*, 986 F. Supp. 1112 ,1116 (C.D. Ill. 1997) ("The standard of judicial review under the IDEA differs from that governing the typical review of a motion for summary judgment."). When both parties agree that the court's decision should be made on the administrative record, a motion for summary judgment "is simply the procedural vehicle for asking the judge to decide the case on the basis of the administrative record." *Hunger v. Leininger*, 15 F.3d 664, 669 (7th Cir. 1994). Consequently, IDEA's standard of review applies here. *See* 2 *Education Law* § 6:10 (March 2018) ("Although frequently styled as Rule 56 motions for summary judgment, motions for review of a state's compliance with IDEA are administrative appeals, not summary judgment motions. A district court's decision on an IDEA appeal is not governed by the presence or absence of material factual disputes, but rather the court receives the administrative record, additional evidence it deems relevant, and bases its decision on the preponderance of the evidence.").

*B. Analysis*[3]

1.  Timeliness of N.D.S.'s claim

IDEA requires a parent to bring a due-process complaint "within 2 years of the date the parent . . . knew or should have known about the alleged action that forms the basis of the complaint . . . ." 20 U.S.C. § 1415(f)(3)(C).  Likewise, the implementing regulations provide that "[a] parent . . . must request an impartial hearing on [his or her] due process complaint within two years of the date the parent . . . knew or should have known about the alleged action that forms the basis of the due process complaint . . . ." 34 C.F.R. § 300.511(e).  The parties dispute whether, under this limitations period, the due-process complaint filed by N.D.S.'s parents on December 29, 2017—which complains of the inadequacy of a reevaluation that was provided to them on December 16, 2015—was time barred.

As a threshold matter, the Court agrees with the well-reasoned opinions from the Third and Ninth Circuits interpreting IDEA's limitations period.  *Avila v. Spokane Sch. Dist. 81*, 852 F.3d 936 (9th Cir. 2017); *G.L. v. Ligonier Valley Sch. Dist. Auth.*, 802 F.3d 601 (3d Cir. 2015).  As those courts have held, "IDEA's statute of limitations is triggered

---

[3]AFSA argues that this case is moot because N.D.S.'s triennial reevaluation is coming due in December 2018.  *See* ECF No. 24 at 20-21; *see also* 34 C.F.R. § 300.303(b)(2). But there is no indication that N.D.S.'s parents are willing to consent to that reevaluation, and thus the services that N.D.S. receives will continue to be influenced by the December 2015 reevaluation during the foreseeable future.

when 'the parent or agency *knew or should have known* about the alleged action that forms the basis of the complaint,'" rather than when the school's unlawful action occurred. *Avila*, 852 F.3d at 944. Parents then have two years from the date that the limitations period began running to file their due-process complaint.

The IHO's conclusion that the statute of limitations did not bar N.D.S.'s claim was based on a misunderstanding of N.D.S.'s claim. The IHO understood N.D.S.'s parents to be claiming "that the 2015 evaluation was *outdated*, and was *no longer accurate* in October of 2017[.]" OAH 10 (emphasis added). In other words, the IHO understood N.D.S.'s parents to be arguing that, although the December 2015 reevaluation may have been fine when it was completed, it became "outdated" after N.D.S. suffered a concussion in June 2017.

As both parties agree, however, that is *not* what N.D.S.'s parents contend. Again, N.D.S.'s parents' goal in this litigation is to force AFSA to pay for an IEE of N.D.S. AFSA cannot be forced to pay for an IEE unless "the parent disagrees with an evaluation obtained by the [school]." § 300.502(b)(1). For that reason, N.D.S.'s parents are not asserting that the December 2015 reevaluation "was no longer accurate in October of 2017", OAH 10, as that would not qualify as a "disagree[ment]" with the December 2015 reevaluation. Rather, N.D.S.'s parents are asserting that the December 2015 was *never* accurate.

The question, then, is when N.D.S.'s parents "knew or should have known" about the alleged problems with the December 2015 reevaluation. 20 U.S.C. § 1415(f)(3)(C); 34 C.F.R. § 300.511(e). The Court cannot identify that date on this record. N.D.S.'s parents have consistently refused to explain what was wrong with the December 2015 reevaluation, much less explain why they neither knew nor should have known of that problem until almost two years after they received the reevaluation.[4]

The Court will therefore remand the case to the IHO to further develop the record and decide whether N.D.S.'s claim is time-barred.[5] Specifically, the IHO must determine the following: (1) the reason or reasons why N.D.S.'s parents contend that the December 2015 reevaluation was inadequate at the time it was completed; (2) when N.D.S.'s parents knew or should have known of those problems; and (3) whether the due-process complaint filed by N.D.S.'s parents on December 29, 2017 is timely.

---

[4]N.D.S.'s parents have claimed that, under § 300.502(b)(4), they do not have to identify the basis of their disagreement with the December 2015 reevaluation. But that regulation merely provides that "the public agency"—that is, *AFSA*—"may not require the parent to provide an explanation" for requesting an IEE. That regulation does not govern agency or court proceedings. In particular, it does not bar an IHO or a federal judge who must determine when a parent knew or should have known of a problem with an evaluation from requiring the parent to identify that problem.

[5]Remand is the appropriate disposition when the Court does not have a sufficiently developed record to review the claim. *See, e.g.*, *Lague v. District of Columbia*, 130 F. Supp. 3d 305 (D.D.C. 2015); *Taylor v. District of Columbia*, 770 F. Supp. 2d 105 (D.D.C. 2011).

## 2.  Merits of N.D.S.'s claim

If the IHO determines that N.D.S.'s challenge to the December 2015 reevaluation is not time barred, then the IHO must order AFSA to either "[f]ile a due process complaint to request a hearing to show that its evaluation is appropriate" or "[e]nsure that an independent educational evaluation is provided at public expense[.]" § 300.502(b)(2).  The question, though, is what would be the *subject* of the hearing or IEE?  Would the hearing or IEE focus on whether the December 2015 reevaluation was "appropriate" at the time it was completed?  Or would the hearing or IEE instead focus on whether the December 2015 reevaluation accurately describes N.D.S.'s current condition, in light of the concussion and other events of the summer of 2017?

This question almost never arises—and thus is almost never addressed by courts—because a parent who disagrees with an evaluation almost always does so shortly after receiving it.  After the parent objects, the due-process hearing or IEE must take place "without unnecessary delay."  *Id*.  Because the condition of a child generally does not materially change in the short period between the school's evaluation and the hearing or IEE, both the school's evaluation and the hearing or IEE necessarily address the same topic:  the condition of the child at roughly the same point in time.

Here, though, the machinations of N.D.S.'s parents have created a highly unusual situation:  (1) the parents waited almost two years before expressing

disagreement with the December 2015 reevaluation; (2) N.D.S.'s condition changed in significant ways following her concussion in June 2017; and (3) N.D.S.'s parents refused to allow AFSA to reevaluate N.D.S. in light of her changed conditions. In other words, the decisions of N.D.S.'s parents opened a two-year gap between the reevaluation with which they purport to disagree and their request for an IEE.

So if N.D.S. obtains an order forcing AFSA to provide a publicly financed IEE, will the independent expert be asked to express an opinion on whether the December 2015 reevaluation was "appropriate" at the time it was completed? Or, as N.D.S.'s parents argue, will the independent expert instead be asked to evaluate N.D.S.'s current condition and her needs going forward, taking into account the concussion that she suffered in June 2017 and the other changed circumstances?

IDEA and its implementing regulations make the purpose of the IEE clear. A school has an obligation to do an evaluation. A parent has a right to receive a copy of that evaluation and the materials on which it is based. If the parent disagrees with the evaluation, the school must defend the adequacy of the evaluation at a hearing—or, if the school is unwilling to do so, the school must pay for an IEE. The purpose of the hearing or IEE is obviously to address the matter in controversy—specifically, the alleged shortcomings in the school's evaluation that gave rise to the hearing or IEE.

This is reflected in the regulations themselves, which closely tie the IEE to the school's evaluation—not only by making disagreement with an evaluation the trigger for an IEE, but by providing that "[a] parent is entitled to only one [IEE] at public expense each time the public agency conducts an evaluation with which the parent disagrees." § 300.502(b)(5). This is also reflected in the Supreme Court's description of the purpose of the IEE:

> School districts have a "natural advantage" in information and expertise, but Congress addressed this when it obliged schools to safeguard the procedural rights of parents and to share information with them. *See School Comm. of Burlington v. Department of Ed. of Mass.*, 471 U.S. 359, 368 (1985). As noted above, parents have the right to review all records that the school possesses in relation to their child. § 1415(b)(1). They also have the right to an "independent educational evaluation of the[ir] child." *Ibid.* The regulations clarify this entitlement by providing that a "parent has the right to an independent educational evaluation at public expense if the parent disagrees with an evaluation obtained by the public agency." 34 CFR § 300.502(b)(1) (2005). IDEA thus ensures parents access to an expert who can evaluate all the materials that the school must make available, and who can give an independent opinion. They are not left to challenge the government without a realistic opportunity to access the necessary evidence, or without an expert with the firepower to match the opposition.

*Schaffer*, 546 U.S. at 60-61; *see also T.P. ex rel. T.P. v. Bryan Cty. Sch. Dist.*, 792 F.3d 1284, 1293 (11th Cir. 2015) ("The parental right to an IEE is not an end in itself; rather, it serves the purpose of furnishing parents with the independent expertise and

information they need to confirm or disagree with an extant, school-district-conducted evaluation.").

N.D.S.'s parents' theory—that by disagreeing with the adequacy of an evaluation conducted in December 2015, they triggered the right to an independent evaluation of N.D.S.'s condition in October 2017—would unmoor the IEE from its purpose. What triggers the right to an IEE is a parent's disagreement with an evaluation—here, N.D.S.'s parents' objections to the December 2015 reevaluation. But then, according to N.D.S.'s parents, the subject of the IEE would not be their objections to the December 2015 evaluation. Instead, the subject of the IEE would be something about which there is no dispute—indeed, something about which AFSA has never expressed an opinion because it has not been permitted to *form* an opinion: how N.D.S.'s condition changed subsequent to the December 2015 reevaluation.

Thus, the IEE demanded by N.D.S.'s parents would not, in the words of the Supreme Court, counter a "'natural advantage' in information and expertise" possessed by AFSA, as the IEE would address a topic (N.D.S.'s current condition) about which AFSA likely knows less than N.D.S.'s parents and doctors. *Id.* at 60. The expert who performed the IEE could not "evaluate", *id.*, AFSA's opinion about N.D.S.'s current condition because AFSA has never formed such an opinion, having been blocked by N.D.S.'s parents from reevaluating N.D.S. And N.D.S.'s parents do not need "an expert

-14-

with the firepower to match the opposition" because, on the topic of N.D.S.'s current

condition, there is no "opposition" to "match." *Id.* at 61. It would make no sense for

IDEA to provide that a parent's disagreement with a school's opinion regarding topic *A*

requires the school to pay for an independent expert to express an opinion regarding

topic *B*.

Moreover, the theory of N.D.S.'s parents would substantially undermine the

reevaluation process established by IDEA. Congress specifically contemplated that a

disabled child's circumstances would change. It gave the parents of a disabled child the

right to request a reevaluation, and it imposed an obligation on the school to perform

that reevaluation. § 1414(a)(2)(A). If the parents then disagree with the reevaluation,

they can force the school to defend it or pay for an IEE—but not until the school first

*conducts* a reevaluation.

On the theory of N.D.S.'s parents, there would be no reason why any parent

would request a reevaluation. Instead, parents would simply follow the lead of

N.D.S.'s parents: Every year or two, they would claim that they disagree with a past

reevaluation of their child, refuse to explain why, forbid the school to conduct a new

reevaluation, and demand that the school pay for an independent evaluation of their

child's current condition. As a practical matter, the parents would get annual

reevaluations of their child, but rather than those reevaluations taking the form

envisioned by Congress—a reevaluation by the school and then, if a parent disagrees, a hearing or IEE focused on the school's reevaluation—those reevaluations would take the form of independent evaluations paid for by taxpayers.

And that seems to be exactly what N.D.S.'s parents hope to achieve by pursing this litigation: minimizing the role that schools play in the reevaluation process. Everyone involved in this case—N.D.S.'s parents, N.D.S.'s doctor, AFSA, and the IHO—agree that the December 2015 reevaluation has become obsolete in light of what happened to N.D.S. during the summer of 2017. AFSA wants to reevaluate N.D.S. so that it can propose changes to her IEP and meet her current needs. But N.D.S.'s parents have refused to allow AFSA to reevaluate her. Instead, N.D.S.'s parents are insisting that, by expressing disagreement with the accuracy of the December 2015 reevaluation, they can force AFSA to either (1) defend the two-year-old evaluation as an accurate evaluation of N.D.S.'s current condition (which AFSA could not do even if it wanted to, given that it has been barred by N.D.S.'s parents from *evaluating* her current condition) or (2) pay for an independent examination of N.D.S.'s current condition. That evaluation, in turn, would drive the IEP process, as AFSA would be legally required to consider the evaluation, *see* § 300.502(c)(1), as the evaluation would be the only existing evaluation of N.D.S.'s current condition (because her parents will not allow the school to conduct its own reevaluation). This outcome would be far removed from the

"cooperative process" that the Supreme Court identified as "[t]he core" of IDEA.

*Schaffer*, 546 U.S. at 53.

In sum, the Court holds that, if N.D.S.'s claim is not time barred, then the IHO must order AFSA either to "[f]ile a due process complaint to request a hearing to show that its evaluation is appropriate" or "[e]nsure that an independent educational evaluation is provided at public expense." § 300.502(b)(2).[6] If a hearing or IEE is ordered, however, that hearing or IEE must focus on whether the December 2015 reevaluation was "appropriate" at the time it was completed.[7] If N.D.S.'s parents want a publicly funded IEE with respect to N.D.S.'s current condition, then they must follow the reevaluation procedures of IDEA and its implementing regulations. Specifically,

---

[6]N.D.S.'s parents argue that, through its actions, AFSA has forfeited or waived its right to file a due-process complaint, leaving AFSA no alternative but to pay for an IEE. The Court leaves this argument to the IHO to address in the first instance.

[7]When a parent genuinely cares about the accuracy of a prior evaluation, a hearing or IEE focused on that question will obviously be useful. In this case, however, such a hearing or IEE would be a waste of time, as everyone recognizes that N.D.S.'s condition has changed and the December 2015 reevaluation is obsolete. It seems likely that N.D.S.'s parents expressed disagreement with the December 2015 reevaluation not because they really cared about whether it was accurate, but because they had been advised that expressing such disagreement would give them the right to a publicly funded IEE focused on N.D.S.'s current condition. Without that incentive, parents will object to the accuracy of an evaluation only when the objection is sincere and there is something at stake, and hearings and IEEs regarding the accuracy of evaluations will be worthwhile.

they must allow AFSA to reevaluate N.D.S. and then, if they disagree with that reevaluation, they can request a publicly funded IEE.

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT IS HEREBY ORDERED THAT:

1. The parties' cross-motions for summary disposition [ECF Nos. 18 and 22] are DENIED WITHOUT PREJUDICE.

2. The case is REMANDED to the Independent Hearing Officer for further proceedings consistent with this order.

Dated:  November 28, 2018            s/Patrick J. Schiltz
                                     Patrick J. Schiltz
                                     United States District Judge